IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARK A. CHRISTENSEN, | § | |
| #09220-046, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:15-CV-0854-L-BK |
| | § | |
| EDDY MEJIA, et al., | § | |
|     Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the District Judge's *Standing Order of Reference*, Doc. 19, this case was referred to the undersigned for pretrial management. The Court now considers Defendant Joseph Capps, M.D.'s *Motion to Dismiss*, Doc. 64. For the reasons that follow, Defendant's motion should be **GRANTED**.

**I. BACKGROUND**

*Pro se* Plaintiff Mark Christensen ("Christensen"), currently incarcerated at the Federal Corrections Institute in Fort Worth, Texas, brings this claim pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and the Federal Tort Claims Act ("FTCA"). Doc. 62 at 1. Christensen claims that, while incarcerated at the Federal Corrections Institute in Seagoville, Texas, employees there, including Dr. Joseph Capps ("Dr. Capps"), were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. Doc. 62 at 2–9. As acting clinical director and one of Christensen's treating physicians at the time, Dr. Capps is accused of denying and delaying treatment for Christensen's cancer, sleep apnea, orthopedic knee problems, E. coli infection, and neurological problems. Doc. 62 at 6–7. Christensen claims that, as a result, he has been left with "life long [sic]

disabilities" for which he now demands his immediate release from custody, compensatory and punitive damages, and payment for all ongoing medical treatment. Doc. 62 at 6, 75. Dr. Capps has filed a motion to dismiss Christensen's Second Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted, Doc. 64, which, following Christensen's response, Doc. 88, and Dr. Capps' reply, Doc. 84, the Court now considers.

## II. APPLICABLE LAW

### A. Rule 12(b)(6) Standard

A plaintiff fails to state a claim for relief under Rule 12(b)(6) when the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In order to overcome a Rule 12(b)(6) motion, a plaintiff's complaint should "contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (quotation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotation marks omitted). The complaint should not simply contain conclusory allegations, but must be pled with a certain level of factual specificity, and the district court cannot "accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quotation omitted).

### B. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted). That qualified immunity extends to doctors "who performed services at the behest of the sovereign." *Richardson v. McKnight*, 521 U.S. 399, 407 (1997).

The qualified immunity inquiry involves two prongs that the Court must answer affirmatively before an official is subject to liability: (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right and (2) whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Pearson*, 555 U.S. at 232. A court may begin its assessment with either prong. *Id.* at 236 (*overruling in part Saucier v. Katz*, 533 U.S. 194 (2001)).

### C. Constitutional Right to Medical Care

The state's exercise of its power to hold detainees and prisoners brings with it a constitutional responsibility to tend to the essentials of their well-being, including by providing for their medical needs. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc). Prison inmates derive their right to have these basic needs met from the Eighth Amendment's prohibition against cruel and unusual punishment. *Id.* As such, an inmate has a clearly established constitutional right not to be denied, by deliberate indifference, attention to his serious medical needs. *Id.* at 650.

Deliberate indifference to the serious medical needs of a prisoner constitutes an "unnecessary and wanton infliction of pain," proscribed by the Constitution. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see also Farmer v. Brennan*, 511 U.S. 825, 829 (1994) (applying the

same deliberate indifference standard in *Bivens* action). A cause of action for deliberate indifference to an inmate's medical needs may be maintained if there is a delay in access to medical care that results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Deliberate indifference also can be shown by proving that jail officials refused to treat the inmate, ignored his complaints, or intentionally treated him incorrectly. *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). A prison medical official's "failure to alleviate a significant risk that the official should have perceived, but did not, is insufficient to show deliberate indifference." *Id.* (citation, alteration, and internal quotation marks omitted). "Deliberate indifference encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997).

Conversely, deliberate indifference "cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001). The "question whether . . . additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment" and is not actionable under section 1983 or *Bivens*. *Estelle*, 429 U.S. at 107. "At most it is medical malpractice, and as such the proper forum is the state court under the Texas Tort Claims Act." *Id.*

Under the "deliberate indifference" standard, a plaintiff also must establish that the defendants acted with subjective deliberate indifference to his need for medical care. *Brown v. Strain*, 663 F.3d 245, 249 (5th Cir. 2011). To show that level of indifference, a plaintiff must present evidence that: (1) the defendant had "subjective knowledge of facts from which an inference of substantial risk of serious harm could be drawn"; (2) the defendant actually drew

4

that inference; and (3) the defendant's response to the risk indicates that he subjectively intended that the harm occur. *Id.* (quotation marks omitted). Deliberate indifference thus requires actual knowledge and conscious disregard of the risk of harm to the plaintiff. *Farmer*, 511 U.S. at 834..

### III. DISCUSSION

Dr. Capps argues that the facts, as pled by Christensen, do not allow the court to infer more than a mere possibility of misconduct. Doc. 64 at 7–8. Additionally, Dr. Capps argues that the vast amounts of medical treatment Christensen received for each of his medical conditions contradicts his claim of deliberate indifference. Doc. 64 at 8–9. Lastly, Dr. Capps maintains that he is entitled to the defense of qualified immunity. Doc. 64 at 4–5.

**A. Deliberate Indifference**

Deliberate indifference is an extremely high standard to meet; unsuccessful medical treatment, acts of negligence, medical malpractice, or a prisoner's disagreement with his medical treatment will generally not suffice. *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006). Here, even accepting the facts pled by Christensen as true, his complaint fails to state a plausible claim for relief under that high standard.

*(i) Cancer Treatment*

*Pre-Operative Care*

Christensen objects to the timing and amount of treatment he received for his cancer. Specifically, he claims that his tumor should have been discovered sooner and that he should have received chemotherapy or radiation treatment. Doc. 62 at 31–2. Thus, Christensen claims, excising the tumor, which required taking a large portion of his lung, could have been avoided if Dr. Capps had not been "dragging [his] feet." Doc. 62 at 31. However, Dr. Capps contends that Christensen was provided ample treatment in a timely manner. Doc. 64 at 6.

5

While the facts, as pled by Christensen, demonstrate that Dr. Capps was aware of a substantial risk to Christensen's health, they do not show that he disregarded that risk of harm or intended the harm to occur. *Farmer*, 511 U.S. at 834. To the contrary, based on Christensen's recounting, Dr. Capps actively monitored Christensen's condition and acted quickly after discovering the tumor. For example, following the first conclusive evidence of a tumor, Dr. Capps immediately discussed the results with Christensen, and scheduled an appointment with a pulmonologist. Doc. 62 at 31. Four days later, after determining the severity of the situation, Dr. Capps opted to send Christensen directly to a thoracic surgeon. Doc. 62 at 32. Following additional testing and hospitalization, the tumor was removed. Doc. 62 at 32–3. A mere two weeks elapsed between the conclusive discovery of the tumor and its removal. Even if the tumor could have been discovered sooner, the failure to do so would not constitute deliberate indifference. *See Farmer*, 511 U.S. at 838 (noting that "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference").

Additionally, Christensen's disagreement with Dr. Capps' decision to elect surgery over chemotherapy or radiation does not constitute deliberate indifference. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) ("Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs."). Moreover, the decision to forego what would likely be a lengthier chemotherapy or radiation regimen indicates that Dr. Capps was considerate of the risk posed by the tumor, and the need to act quickly. Under these circumstances, Dr. Capps' decision to opt for immediate surgery does not support a plausible claim for deliberate indifference.

*Post-Operative Care*

Christensen also claims that Dr. Capps—in coordination with others— acted with deliberate indifference by (1) ordering the confiscation of the spirometer[1] that the hospital provided him after his surgery, Doc. 62 at 33; (2) changing his surgical dressings "once, maybe twice," rather than the daily changing that was ordered by the hospital, Doc. 62 at 34; (3) limiting his pain pills to two per day, rather than four per day, as prescribed at the hospital, Doc. 62 at 34; (4) failing to provide him with a wheelchair for travel, Doc. 62 at 35; (5) refusing to let him purchase a pulse oximeter[2], Doc. 62 at 35; and (6) delaying his consultation with a respiratory therapist and oncologist. In response, Dr. Capps insists that Christensen is merely disagreeing with his treatment plan, complaints which do not establish deliberate indifference. Doc. 64 at 11.

Again, Christensen fails to state a claim upon which relief can be granted. "Considering and failing to follow the recommendations of another treating physician does not amount to deliberate indifference." *Gobert*, 463 F.3d at 349 n. 32. Thus, the fact that the hospital's instructions were not strictly adhered to does not evidence deliberate indifference. Furthermore, regarding the pain pills, Christensen states that it was the facility's policy to permit only two pill lines per day, and does not allege facts indicating that Dr. Capps could alter this distribution policy. Doc. 62 at 34. Therefore, based on Christensen's own allegations, Dr. Capps' alleged withholding of two additional pills appears motivated by adherence to facility policy, rather than any subjective desire for Christensen to be in pain. Notably, the facts as recounted by Christensen indicate that he was provided with care: he received pain medication, had his

---

[1] A spirometer is a medical device used to measure the amount of air inhaled and exhaled by the lungs.
[2] A pulse oximeter is a medical device used to measure the amount of oxygen in a person's blood.

dressings changed, saw a respiratory therapist and oncologist, and had follow-up x-rays taken. Doc. 62 at 34-5.  Again, the fact that Christensen disagreed with the treatment he received does not establish a claim for deliberate indifference.  Norton, 122 F.3d at 292.  Lastly, the court need not credit Christensen's conclusory assertions that Dr. Capps purposefully delayed his appointments with outside doctors.  Collins, 224 F.3d at 498.

While Christensen contends that Dr. Capps' actions violated "[p]rofessional standards," this is not the barometer by which the court measures deliberate indifference.  Doc. 62 at 37–8; see Gobert, 463 F.3d at 349 ("deliberate indifference exists wholly independent of an optimal standard of care").  Hence, Christensen has failed to plead facts sufficient to support a claim that Dr. Capps was deliberately indifferent to his cancer treatment.

### (ii) Sleep Apnea

Christensen also claims that Dr. Capps was deliberately indifferent because he "failed to ensure that [Christensen] received treatment" for sleep apnea.  Doc. 62 at 55.  Specifically, Christensen notes that Dr. Capps might have cancelled a sleep study consultation, and he objects to the delays he endured while waiting for his first and second sleep studies.  Doc. 62 at 52–4.  Dr. Capps maintains that he did treat Christensen's sleep apnea, and that Christensen fails to identify a "serious injury" that any delay might have caused.  Doc. 64 at 12–13.

Christensen has not plead facts showing that Dr. Capps was deliberately indifferent to his sleep apnea.  For the mere delay of medical care to constitute an Eighth Amendment violation it must be shown that deliberate indifference resulted in substantial harm.  Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006).  While Christensen has pled facts showing that Dr. Capps was aware of the harm posed by Christensen's sleep apnea, he has not pled facts showing that Dr. Capps consciously disregarded that harm or took measures to ensure that harm befell

Christensen. *Farmer*, 511 U.S. at 834. To the contrary, the medical records attached to Christensen's complaint indicate that he received substantial amounts of treatment for his sleep apnea.[3] In November 2013, Christensen discussed his sleep apnea with Dr. Capps, who noted the pending sleep study. Doc. 63-1 at 125. After Dr. Capps found the sleep study deleted, he requested it again. Doc. 63-1 at 127. The first sleep study was performed in May 2014. Doc. 63-1 at 129. In July 2014 a second sleep study was ordered to calibrate Christensen's CPAP machine. Doc. 63-1 at 134. At an out-patient appointment in September 2014, the treating physician ordered a CPAP machine for Christensen, which he presumably received. Doc. 63 at 62–4. Lastly, the second sleep study was performed in February 2015, where Christensen's CPAP machine was calibrated. Doc. 63-1 at 136.

Moreover, Christensen does not allege any substantial harm or injury resulting from the delayed treatment for his sleep apnea. *Easter*, 467 F.3d at 463. And, even if true, his conclusory assertion that Dr. Capps might have been deleting consultations fails to state a claim upon which relief may be granted as it alleges only the mere possibility of misconduct. *Iqbal*, 556 U.S. at 679. Thus, given the treatment provided and requested by Dr. Capps and the lack of any substantial injury, the delay in Christensen's sleep apnea treatment does not support a claim for deliberate indifference. *Easter*, 467 F.3d at 463.

### *(iii) Orthopedic Knee Problems*

Christensen's third deliberate indifference claim concerns treatment of his orthopedic knee issues, which cause him to "suffer in pain." Doc. 62 at 56, 59. Specifically, Christensen alleges that Dr. Capps' (1) cancellation of an orthopedic consultation, (2) refusal to administer

---

[3] In ruling on a Rule 12(b) motion, the court may rely on the complaint, documents properly attached to the complaint or incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

the Depo-Medrol[4] injections he was prescribed, (3) failure to review his history of knee problems, and (4) destruction of the orthopedic specialist's recommended treatment, constitutes deliberate indifference.  Doc. 62 at 56.  However, Dr. Capps contends that objections to such treatment decisions cannot support a claim of deliberate indifference.  Doc. 64 at 13.  While the facts, as pled by Christensen, demonstrate that Dr. Capps was aware of a substantial risk to Christensen's health they do not show that he disregarded that risk of harm or intended the harm to occur.  *Farmer*, 511 U.S. at 834.  Christensen notes various instances when he discussed his orthopedic problems with Dr. Capps.  Doc. 62 at 59; Doc 63-1 at 138, 142.  Additionally, he even received the Depo-Medrol injections he had requested.  Doc. 62 at 59.

Christensen's conclusory assertion that Dr. Capps, along with others, destroyed the orthopedic specialist's recommendation that he receive more Depo-Medrol injections fails to support a claim of deliberate indifference.  *Collins*, 224 F.3d at 498.  Even assuming that such a recommendation was made, the decision to order or not to order additional medical treatment is a "classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107.  A disagreement of opinion as to the correct medication and/or medical treatment does not constitute an actionable civil rights claim, but at most, a possible claim of medical malpractice appropriately addressed under state law.  *Id.*  Thus, Christensen has failed to plead facts sufficient to state a plausible claim of deliberate indifference concerning treatment of his orthopedic knee problems.

### (iv) E. coli/Blister Treatment

Christensen's fourth deliberate indifference claim concerns Dr. Capps' failure to treat an E. coli infection.  Following the emergence of two blisters on Christensen's forearm in late December 2013, Dr. Capps drained them, sending a culture of the fluid contained therein to a

---

[4] Depo-Medrol is an anti-inflammatory commonly used to treat pain and swelling in joints.

diagnostic lab. Doc. 63-1 at 148. Testing confirmed "[h]eavy growth" of anti-biotic resistant E. coli. Doc. 63-1 at 151; Doc. 88 at 8. Shortly thereafter, Christensen met with Dr. Capps, who noted that a repeat culture would be required if additional blisters appeared, and—because he had tested positive for E. coli—noted that hospitalization and antibiotics might be required. Doc. 63-1 at 154. Yet, Christensen alleges Dr. Capps continually refused to culture the additional blisters that emerged on his arms, feet, and groin. Doc. 63-1 at 63–5; Doc. 88 at 8. Without treatment, Christensen alleges that the untreated blisters left scarring and "may have" damaged his reproductive system. Doc. 88 at 8. Dr. Capps contends that his initial testing of the blisters and development of a plan should they reoccur, indicates that he was not deliberately indifferent. Doc. 64 at 13–14. Moreover, Dr. Capps argues that any decision to forego additional testing was a medical judgment that cannot support a claim of deliberate indifference. Doc. 64 at 14–15.

While Christensen claims that he "was never, and has never" been treated for his infection, he means to say that he was never treated in the manner he wanted. Doc. 62 at 62. On the contrary, he did receive treatment for the blisters. The facts make clear that Dr. Capps drained the initial blisters, sent cultures for testing, re-examined the blisters, and—believing the blisters were caused by a reaction—altered Christensen's drug regimen accordingly. Doc. 62 at 64–5; Doc. 63-1 at 148–50, 154–5. Additionally, his blisters were examined by other doctors at the facility. Doc. 62 at 64. The mere fact that Christensen disagreed with Dr. Capps' treatment plan cannot support a claim of deliberate indifference. *Gobert*, 463 F.3d at 346. Even if Christensen had not received any treatment, he fails to allege facts showing that Dr. Capps' omission—his refusal to culture additional blisters—was "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. 97 at 106. According to Christensen, the only lasting effect of the incident was scarring. Doc. 62 at 66; Doc. 88 at 4.

While he claims that the blisters near his groin "may have" damaged his reproductive system, such a speculative injury fails to show any harm, much less sufficient harm. *Estelle*, 429 U.S. at 106. Thus, Christensen has failed to plead facts sufficient to support a claim of deliberate indifference regarding his E. coli blisters.

### *(v) Neurological Issues*

Christensen's final deliberate indifference claim concerns the treatment of a neurological issue that caused him "extreme pain and the loss of the use of his left arm and hand." Doc. 62 at 66. Christensen alleges the following: Dr. Capps confirmed a neurology consult, which occurred in December 2012, Doc. 62 at 66–7; at the consultation, the neurologist recommended additional testing, which was subsequently ordered by another doctor, Doc. 62 at 67; yet, the order was later deleted, possibly by Dr. Capps, Doc. 62 at 67; in June 2013, the recommended testing was finally performed by a neurologist who recommended surgery; a follow-up appointment was ordered by Dr. Capps, Doc. 62 at 68; at this follow-up, the neurologist stated he did not want to attempt surgery until Christensen's cancer testing was complete, Doc. 62 at 68; and Dr. Capps grew upset and refused to schedule additional neurology follow-ups or supply the medication that the neurologist had prescribed after he learned that Christensen discussed his cancer with the neurologist, Doc. 62 at 68. Since that time, Christensen alleges that Dr. Capps has refused to treat him, causing him to live with pain and numbness in his arm. Doc. 62 at 70.

While the facts alleged in, and records attached to, the complaint evince Dr. Capps' awareness of Christensen's neurological issues, they fail to support a plausible claim that he was deliberately indifferent. First, Christensen's Second Amended Complaint shows Dr. Capps ordered multiple neurology consultations, and prescribed medication for his neurological condition. Doc. 63 at 67–9; Doc. 63-1 at 138, 142. Additionally, Dr. Capps' decision not to

12

prescribe the medication recommended by the neurologist does not amount to deliberate indifference.  *Gobert*, 463 F.3d at 349 n. 32.  Christensen also appears to claim that Dr. Capps prevented him from receiving surgery; however, while the neurologist's notes from the June 2013 visit indicate "abnormal" findings, he makes no surgery recommendation, as Christensen claims.  Doc. 63-1 at 163–4.  Moreover, Dr. Capps' notes indicate that the neurologist was "unclear" as to a specific time for a follow-up.  Doc. 63-1 at 167.  Thus, Christensen has failed to plead facts indicating that Dr. Capps knew his neurological issues required surgery.  Again, Christensen's conclusory assertion that Dr. Capps might have deleted his consultation with the neurologist is insufficient to state a claim, as it alleges merely the possibility of misconduct.  *Iqbal*, 556 U.S. at 679.

### B. Qualified Immunity

As discussed *supra*, Christensen has failed to allege facts showing that Dr. Capps was deliberately indifferent to any serious medical needs.  Thus, the facts as pled by Christensen fail to make out a violation of his Eighth Amendment right to be free from cruel and unusual punishment, and Dr. Capps is entitled to qualified immunity.  *Id.* at 232.

## IV. LEAVE TO AMEND

Although a court may dismiss a claim that fails to meet the pleading requirements, "it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after repeated opportunities to do so."  *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000).  In this instance, Christensen has already amended his complaint twice, and still his claims are simply incurable for all the reasons stated herein.  Under these circumstances, the Court is under no obligation to again grant leave to amend.

**V. RECOMMENDATION**

For the reasons stated herein, it is recommended that Dr. Capps' *Motion to Dismiss* be **GRANTED**, and all claims against Dr. Capps be **DISMISSED WITH PREJUDICE**.

SO RECOMMENDED on September 29, 2016.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE